JERSEY CENTRAL POWER AND LIGHT COMPANY, PROSE-
CUTOR, v. STATE BOARD OF TAX APPEALS, DE-
FENDANT.

No. 234

PUBLIC SERVICE ELECTRIC AND GAS COMPANY, PROSE-
CUTOR, v. STATE BOARD OF TAX APPEALS ET AL.,
DEFENDANTS.

No. 240

PUBLIC SERVICE ELECTRIC AND GAS COMPANY, PROSE-
CUTOR, v. STATE BOARD OF TAX APPEALS ET AL.,
DEFENDANTS.

No. 256

NEW JERSEY BELL TELEPHONE COMPANY, PROSECUTOR,
v. CITY OF JERSEY CITY ET AL., DEFENDANTS.

No. 257

NEW JERSEY BELL TELEPHONE COMPANY, PROSECUTOR,
v. TOWN OF MONTCLAIR ET AL., DEFENDANTS.

No. 264

NEW JERSEY POWER AND LIGHT COMPANY, PROSE-
CUTOR, v. THE TOWN OF DOVER ET AL., DEFEND-
ANTS.

Argued December 14, 1942—Decided July 22, 1943.

Before Justices CASE, DONGES and COLIE.

For Jersey Central Power and Light Company, *Autenrieth & Worlendyke* (*Joseph F. Autenrieth*).

For Public Service Electric and Gas Company, *William H. Speer.*

For New Jersey Bell Telephone Company, *J. Henry Harrison, Thomas Glynn Walker* and *Robert F. Darby.*

For New Jersey Power and Light Company, *Wall, Haight, Carey & Hartpence* (*John A. Hartpence*).

For City of Newark, Town of Montclair and numerous other municipalities, *Herbert J. Hannoch.*

For City of Jersey City, mayor and council of the City of Hoboken et al., *Edward P. Stout.*

For Town of Dover, *Alfred J. Grosso.*

PER CURIAM.

The cases enumerated above are on writs of *certiorari* to review the action of the State Board of Tax Appeals with respect to the 1940 gross receipts franchise tax imposed on the involved utilities. The cases were decided as a unit by the State Board, were argued together before us and, inasmuch as they turn upon a single and common question of statutory construction, are again disposed of as one.

The question is—What is meant by the words "The whole length of its lines or mains" as used in section 3, chapter 4, *Pamph. L.* 1940, and section 6a, chapter 5, *Pamph. L.* 1940? The phrase appears also in the antecedent legislation. The statute imposes a tax upon such portion of the gross receipts of the utility—using the language of section 6a, chapter 5, *Pamph. L.* 1940, *supra*—"as the length of the lines or mains in this state, located along, in or over any public street, highway, road or other public place bears to *the whole length of its lines or mains.*" The way that the formula works out is that if the utility is permitted to include in the classification that we have indicated by italics the connections which carry the

service of the utility from the highway to the immediate user its franchise tax becomes less. This is because the length of the lines or mains located along, in or over public streets, &c., thus becomes a smaller percentage of the whole; and it is the percentage which the length of the lines or mains along the streets, &c., bears to the whole length of the lines or mains that measures the amount of money to which the franchise tax is applicable. It was the finding of the State Board that those extensions which may be comprehensively grouped under the classification of service connections were not within the classification of lines or mains as used in the statute. The utilities are litigating that construction.

Practical operation, strangely enough, has worked, in different instances, in opposite directions. Some of the utilities, of which the Telephone Company was one, consistently included in their reports to the State Tax Department the service connections within the lengths of lines and mains. Others, such as the Public Service Electric and Gas Company, consistently excluded service connections from that classification. The State Tax Department apparently accepted that diverse system of reports and laid the several taxes in accordance therewith. Both methods could not be right as they constitute opposite constructions of what is essentially the same statutory provision. The issue was drawn when the Public Service Electric and Gas Company, which had previously excluded service connections in computing its mileage, included them in 1940. A substantial decrease in the company's franchise tax followed, and the municipalities, observing the decrease, discovered the reason. The legislature thereupon, chapters 20 and 21, *Pamph. L.* 1941, amended the statutes in such fashion as thenceforward to exclude the service connections from the computation. Therefore, unless the law is again changed, the determination of the issue before us is applicable only to the year 1940, and will have no bearing upon later years. In deciding the question the State Tax Board used this language:

"These statutes (viz., section 6a, chapter 5, *Pamph. L.* 1940, section 3, chapter 4, *Pamph. L.* 1940) refer to 'lines or mains.' While some doubt might attend the word 'lines,'

were it alone, there cannot be the slightest question but that the word 'mains' means only, as the word itself signifies, the main or principal conduits by which gas and water are distributed by gas and water companies. It does not mean the service pipes connecting the mains with the consumer's premises. The plain understanding of the word 'mains' in this sense by the public at large is proven by the municipalities to be that likewise universally entertained by experts and engineers associated with the utility industry. This being established as to the word, 'mains,' it is obvious that a similar construction must be accorded to the word 'lines,' inserted in the statute to cover utilities which transmit their product by wires and cables, *i. e.,* power, light, and telephone companies. There is no reason to suppose that the legislature, after plainly excluding the computation of service pipes, by the use of the word 'mains,' in the case of gas and water companies, would have intended to include service connections or drop wires in the case of the other companies. Every dictate of fairness and uniformity would compel a conclusion to the contrary. In short, the collocation of the words, 'lines' and 'mains,' in the phrase 'lines or mains,' in the light of the context, calls for the conclusion, as a matter of English, that the words were used in the same sense. *Noscitur a sociis. State* v. *Murzda (Court of Errors and Appeals,* 1936), 116 *N. J. L.* 219, 224."

We agree with that construction and deem it unnecessary to enlarge upon the reasoning further than to call attention to the genesis of the language and of the tax. Chapter 195, *Pamph. L.* 1900, known as the Voorhees Act, was directed toward the holders of franchises in the public streets, highways, roads or other public places, except corporations taxable under the Railroad and Canal Company Act, and created a two per centum tax upon the annual gross receipts of all such franchise holders, except that "any oil or pipe-line company having part of its transportation line in this state and part thereof in another state or states" should make a report showing its gross receipts on its whole line, together with a statement of the length of its whole line and the length of its line in this state along any street, highway, road, lane or

other public place, "and the franchise tax of such oil or pipe-line company for business so done in this state shall be upon such proportion of its gross receipts as the length of its line in this state along any street, highway, road, lane or other public place, bears to the length of its whole line." The scheme seems quite simple. A franchise tax for the use of the public ways was imposed and was calculated by imposing an excise upon the proceeds from the business done by reason of that use; but where the *line* of the utility extended into another state and the receipts represented use of highways other than our own then our tax would reach only such part of the gross receipts as was commensurate with the part of the *line* that occupied our highways. The present law stemmed from that source and is understandable as a continuation of the same reasoning. "Line" was clearly there used in the sense of a "main," and the words "lines" and "mains" as used in the present statute carry the same significance.

The New Jersey Power and Light Company submits that assuming the correctness of the State Board of Tax Appeals interpretation of chapter 5, *Pamph. L.* 1940, relief thereunder against it cannot be given to any municipality other than the Town of Dover, for the assigned reason that the Town of Dover was the only municipality which filed an appeal from the assessment of the Commissioner to the State Board of Tax Appeals. The record discloses, however, that upon the filing of the appeal by the Town of Dover the State Board directed by order that notice be given to all of the municipalities entitled to any portion of the excise tax to be paid by the New Jersey Power and Light Company and that in response thereto the Town of Phillipsburg, the Borough of Rockaway and the Townships of Hillsborough and Warren caused appearances to be made in their behalf in the proceedings and an argument of their contentions to be presented. The State Board thereupon accepted those municipalities as full litigants and included them within the field of its decision. We think that the point is unsubstantial.

The judgments of the State Board of Tax Appeals will be affirmed, with costs.